UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JEFFREY BEARY

VERSUS

CENTENE CORPORATION

CIVIL ACTION

NO. 20-9-SDJ

## RULING AND ORDER

Before the Court is a sealed Motion for Summary Judgment filed by Defendant Centene Corporation on January 24, 2022 (R. Doc. 39).[1]  Also before the Court is a document styled "Motion for Summary Judgment" filed by Plaintiff Jeffrey Beary, who is proceeding *pro se* in this litigation (R. Doc. 47).  Centene has filed a Memorandum in response to Plaintiff's Motion (R. Doc. 48).  Oral argument on these Motions is not necessary.  Having considered both Motions, supporting memoranda, and exhibits; Centene's Opposition; and applicable legal authorities, the Court finds that Centene is entitled to summary judgment regarding Plaintiff's claims against it.  Accordingly, it is ordered that Centene's Motion for Summary Judgment be granted and that all of Plaintiff's claims against it be dismissed with prejudice.  It also is ordered the Plaintiff's Motion be denied.

---

[1] As an initial matter, the Court notes that while it granted permission for Defendant Centene Corp. to file its Motion for Summary Judgment under seal, the Court does not find that this Ruling and Order should be sealed.  *See June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022) (noting that "at the *adjudicative* stage … the standard for shielding records from public view is far more arduous" and that courts "should be ungenerous with their discretion to seal judicial records"); *BP Expl. & Prod., Inc. v. Claimant ID 100246928*, 920 F.3d 209, 211 (5th Cir. 2019) (recognizing "a strong presumption of public access to our court's records").

I.      BACKGROUND

    A.      **Preliminary Note Regarding Plaintiff's Motion**

In response to the Motion for Summary Judgment filed by Centene, and within the time allotted by this Court for Plaintiff to file an opposition thereto, Plaintiff filed a document styled "Motion for Summary Judgment."[2] However, Plaintiff's Motion fails to comply with this Court's Local Civil Rule 56(b)(1), which mandates that "[a] motion for summary judgment shall be supported by a separate, short, and concise statement of material facts, each set forth in separately numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Plaintiff's Motion consists entirely of a short, introductory paragraph, followed by two numbered alleged "uncontroverted material facts in support of this Motion."[3] This does not comport with LR 56(b)(1) in that the purported statement of "uncontroverted material facts" is not separate from the Motion itself, instead primarily comprising said Motion. Additionally, Local Civil Rule 7(d) requires contested motions to be accompanied by a separate memorandum in support containing "a concise statement of reasons supporting the motion and citations of authorities." Plaintiff's Motion does not, consisting only of the Motion itself. As such, the Court finds that as a motion seeking summary judgment, Plaintiff's "Motion for Summary Judgment" is procedurally inadequate and, therefore, must be denied as such. *See NCO Fin. Sys., Inc. v. Harper–Horsley*, No. 07–4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) ("a pro se litigant is not 'exempt … from compliance with relevant rules of procedural and substantive law.'") (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)); *see also Berry v. LoanCity*, 489 F.Supp.3d 441, 447 (M.D. La. 2020) (a "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs").

---

[2] R. Doc. 47.
[3] *Id.* at 1-2.

However, Plaintiff's Motion, which was filed in response to an Order by this Court establishing a deadline for Plaintiff to file an opposition to Centene's Motion for Summary Judgment, contains a "Counter-Statement of Disputed Facts," in which Plaintiff "respectfully responds to Centene Corporation's 'Statement of Uncontested Material Facts.'"[4]  Plaintiff's Counter-Statement largely comports with Local Civil Rule 56(c), which mandates that "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts" that "shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule."  Plaintiff does specifically address each of Centene's alleged Undisputed Material Facts, stating whether each is admitted or denied, though not all denials contain record citations.  However, as *pro se* litigants are held to less stringent standards in presenting their cases, the Court will interpret Plaintiff's Motion as an opposition to Centene's Motion for Summary Judgment.  *See S.E.C. v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (recognizing the established rule that courts must construe *pro se* plaintiff's allegations and briefs more permissively and liberally).  The Court therefore considers Centene's Motion for Summary Judgment opposed.

**B.    Relevant Factual and Procedural Background**

Plaintiff began working as a data analyst for Centene Management Company, LLC, on March 30, 2015.[5]  In August of 2017, Plaintiff filed a Charge of Discrimination with Louisiana Commission on Human Rights.[6]  In that Charge of Discrimination, numbered 27A-2017-00038, Plaintiff claims he suffered disability discrimination because a request for an accommodation due

---

[4] R. Doc. 47-1 at 1-8; R. Doc. 45.
[5] R. Doc. 39-1 at 2; 39-3 at 1.
[6] *Id.*; R. Doc. 39-2 at 12; R. Doc. 39-3 at 1; R. Doc. 47-1 at 2.

to a medical condition he was suffering was not met.[7] Prior to that LCHR request, Plaintiff, in July 2017, filed a Charge of Discrimination with the Equal Employment Opportunity Commission, number 461-2017-01523, also alleging disability discrimination after his request for a reasonable accommodation had been denied.[8]

On April 3, 2019, Plaintiff and Centene entered into both a Mediation Settlement Agreement and a Separation Agreement and General Release in which, *inter alia*, the Parties agreed that Plaintiff's employment at Centene would be terminated and reached a settlement agreement resolving Plaintiff's discrimination allegations against Centene.[9] Shortly thereafter, on July 5, 2019, Plaintiff filed a second Charge of Discrimination with the EEOC, numbered 461-2019-01065, in which Plaintiff alleged retaliation and disability discrimination based on his "discharge[]" from Centene on March 4, 2019.[10]

On January 6, 2020, Plaintiff filed suit against Centene, alleging violation of the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1983, in addition to various Louisiana state laws.[11] Plaintiff subsequently filed an Amended Complaint on July 23, 2021, in response to this Court's grant of a Motion to Dismiss filed by Centene.[12] In his Amended Complaint, Plaintiff brings claims against Centene for alleged violations of the ADA, the Louisiana Employment Discrimination Law (La. R.S. 23:301, et seq.), and the Louisiana Whistleblower Statute (La. R.S. 23:967), as well as for Unlawful Violation of a Conciliation Agreement (La. R.S. 51:2258) and breach of contract.[13]

---

[7] R. Doc. 39-2 at 12.
[8] R. Doc. 39-1 at 2; R. Doc. 39-3 at 1; R. Doc. 47-1 at 2.
[9] R. Doc. 39-1 at 2-3; R. Doc. 39-2 at 1-2, 3-10; R. Doc. 39-3 at 2; R. Doc. 47-1 at 3.
[10] R. Doc. 39-1 at 2; R. Doc. 39-2 at 16; R. Doc. 39-3 at 3; R. Doc. 47-1 at 5.
[11] R. Doc. 1.
[12] R Docs. 21, 23, and 24.
[13] R. Doc. 24 at 1-2 ¶¶ 1-2.

Plaintiff later sought leave of Court to file a second Amended Complaint.[14] On January 4, 2022, the Court denied Plaintiff's Motion based on a procedural defect and gave Plaintiff seven days to refile his Motion for Leave.[15] Plaintiff, however, did not refile his Motion for Leave, making Plaintiff's initial Amended Complaint the governing Complaint in this litigation. Soon thereafter, as noted above, Centene filed the instant Motion for Summary Judgment.

## II.    LAW AND ANALYSIS

### A.    Summary Judgment Standard

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment must explain the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Stated another way, "[i]f the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by showing that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Garcia v. LVNV Funding LLC*, No. 08-514, 2009 WL 3079962, at *2 (W.D. Tex. Sept. 18, 2009). If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Vanberge v. Haley*, No. 19-814, 2021 WL 400511, at *1 (M.D. La. Jan. 15, 2021), *report and recommendation adopted sub nom.*, 2021 WL 400537 (M.D. La. Feb. 4, 2021) (citing

---

[14] R. Doc. 29.
[15] R. Doc. 36.

5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party satisfies this burden "by submitting or referring to evidence, [which] set[s] out specific facts showing that a genuine issue exists." *Garcia*, 2009 WL 3079962, at *2.

This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 requires that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little*, 37 F.3d at 1075.

In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party and may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). If a plaintiff is proceeding *pro se*, "[t]he district court does not have a duty to search the entire record to find evidence supporting the non-movant's opposition." *Watkins v. Experian Info. Sols., Inc.*, No. 13-239, 2014 WL 12879669, at *4 (W.D. Tex. Sept. 8, 2014), *report and recommendation adopted*, 2014 WL 12879668 (W.D. Tex. Oct. 3, 2014) (citing *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996)). "Rather, the non-movant must 'identify specific evidence in the record, and [] articulate the "precise manner" in which that evidence support[s] [her] claim.'" *Id.* (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

**B.     Analysis**

In its Motion for Summary Judgment, Centene claims that it is entitled to both summary judgment on Plaintiff's claims against it as well as attorneys' fees and costs it has incurred in defending this action. The Court addresses each of these, in turn, below.

**1.     Centene's Motion for Summary Judgment**

As argued by Centene, summary judgment in its favor is warranted here because Plaintiff already has settled all of his claims against Centene and released Centene from liability.[16] Centene further asserts that the provisions of the Separation and Release Agreement bar Plaintiff from filing the instant lawsuit.[17] However, as Centene's arguments are based on the validity of the Settlement Agreement and the Separation and Release Agreement, the Court first addresses whether Plaintiff has fully been paid, as agreed to in these documents.

**a.     Whether the Settlement Amount Has Been Paid**

As an initial matter, Plaintiff asserts that Centene has failed to comply with the terms of the Settlement Agreement, specifically those set forth in Paragraph 7(a).[18] As provided by Paragraph 7(a):

> Respondent has agreed to settle with Mr. Beary in the amount of $67,000.00 which is allocated as follow[s]: $53,000 in one lump sum and approximately $14,000 is for six (6) months of employer share of health insurance premium covered. The Respondent will issue a neutral letter of reference. The Complainant waives his right to future employment with Centene D/B/A Louisiana Healthcare Connections.[19]

Per Plaintiff, to date, Centene has only paid him the $53,000 and still owes him $14,000.[20] As alleged in his Opposition, Plaintiff claims he at no time agreed to elect Centene's insurance

---

[16] R. Doc. 39-1 at 6.
[17] *Id.*
[18] R. Doc. 47 at 1-2.
[19] R. Doc. 39-2 at 2.
[20] R. Doc. 24 at 13; R. Doc. 47 at 2; R. Doc. 47-1 at 4, 5.

coverage through COBRA and that he only agreed to payments of $53,000, taxed, and $14,000, not taxed.[21] Plaintiff further argues that he was told by the Director of the LCHR "that Centene was going to send the Plaintiff a separate $14,000 check," which assertion, the Court notes, is in no other way corroborated by record evidence.[22]

There is no dispute that Centene paid Plaintiff the lump sum of $53,000, with taxes withheld.[23] It also is not disputed that Plaintiff did not elect to receive insurance coverage under COBRA after his employment with Centene ended. Rather, the question is whether Centene has met its obligations with regard to the remaining $14,000 or, stated another way, whether Centene still owes Plaintiff $14,000. As argued by Centene, "Plaintiff … had the opportunity to elect to receive COBRA benefits so long as Plaintiff made an election, submitted the election form, and made his portion of the premium payment within the timeframe directed by Centene's third-party COBRA administrator."[24] Centene continues that "[t]he employer's share of the premium had a value of approximately $14,000.00, which Centene was to pay to its third-party COBRA administrator" but that "[t]he parties never agreed that Centene would pay the $14,000.00 value of the employer portion of the COBRA premium payment directly to Plaintiff."[25] The Court agrees.

---

[21] R. Doc. 47-1 at 4.
[22] *Id.* Plaintiff additionally provides "Dr. Leah Raby's handwritten 'negotiation' notes on a Post-It note that the Plaintiff retrieved from the garbage on April 3, 2019," which, per Plaintiff, supports his claim that the settlement was for two separate payments of $53,000 and $14,000. R. Doc. 47-1 at 3, 11. Setting aside the fact that an unsigned, handwritten note retrieved from a garbage can is not competent summary judgment evidence, *see Hunt v. Allison*, No. 09-131, 2010 WL 4340323, at *9 (S.D. Miss. Sept. 2, 2010), to the Court, this document, assuming it to be what Plaintiff purports it is, supports Centene's contention that the $14,000 was payment for six months of insurance coverage, not a payment to Plaintiff.
[23] R. Doc. 39-2 at 11.
[24] R. Doc. 39-1 at 11 n. 6.
[25] *Id.*

8

In addition to Paragraph 7(a) of the Settlement Agreement, Paragraph 2 of the Separation and Release Agreement provides additional detail regarding the compensation being given to Plaintiff by Centene in settlement of Plaintiff's claims of discrimination.[26]  Paragraph 2 provides:

> In consideration of Employee's decision to enter into this Release, Company will provide Employee with the following:
>
> > (a) **Salary Continuation.**  As soon as administratively feasible after the date this Release becomes final and binding, Company shall thereafter pay Employee the lump sum of $53,000.00 less applicable taxes and withholdings.  All separation payments made pursuant to this section are not considered regular compensation for services performed and are therefore not eligible for deferral under Company's 401(k) or deferred compensation plans.  Payment of the lump sum does not entitle employee to any additional compensation and/or employee benefits except as provided in this Release.
> >
> > (b) **COBRA Subsidy.**  You will have the opportunity to elect to continue health and dental insurance (collectively, "Medical Insurance") coverage for yourself and eligible dependents currently receiving coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA").  Shortly after the final day of employment, you will receive information regarding COBRA rights from the Company's third-party COBRA administrator, which will include information regarding available plans and the total premiums for each plan option.  You must make an election and return the election form, along with any required payment, within the timeframe and following the directions provided by the Company's third-party COBRA administrator.  Should you make a timely election under COBRA, for the first SIX months of coverage, you will be responsible for payment of premiums for Medical Insurance in the same amount as is charged to similar active employees for similar coverage, rather than the full COBRA premium amount, and the Company shall pay the remainder of the COBRA premium amount.  After such time and for any remaining period of COBRA eligibility, you will be solely responsible for paying the entire COBRA premium for the coverage elected.[27]

Evidence provided by Centene indicates the information regarding election of COBRA benefits was sent to Plaintiff in April 2019, and Plaintiff does not contest this fact.[28]  And this

---

[26] The Court notes that Plaintiff admits that he and Centene "did enter into an [sic] 'Settlement Agreement' on April 3, 2019." R. Doc. 47-1 at 3.
[27] R. Doc. 39-2 at 3-4.
[28] *Id.* at 18-25.

9

section of the Separation and Release Agreement makes clear that the settlement consideration was in two parts—the lump sum payment to Plaintiff and the amount allotted for payment of part of his COBRA premiums, should he elect COBRA coverage. Provision 7(a) of the Settlement Agreement further supports this position. As such, the Court finds that, based on record evidence, Centene is not bound by the Agreement between it and Plaintiff to pay Plaintiff an additional $14,000, the estimated amount of Centene's portion of Plaintiff's COBRA coverage. The assertions by Plaintiff that he is owed this additional amount or that the Agreements are invalid because Centene has not paid him this amount are conclusory and unsubstantiated and, therefore, not competent summary judgment evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) ("Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment," and "non-movants [may not] rest upon mere allegations made in their pleadings without setting forth specific facts establishing a genuine issue worthy of trial").[29]

### b. Whether Centene Has Been Released from Liability and Plaintiff's Claims are Barred

Having found that Centene has complied with its obligations under the Settlement Agreement and the Separation and Release Agreement, the Court turns now to Centene's argument that Plaintiff, by entering into the Separation and Release Agreement, "fully and finally released"

---

[29] As an additional argument, Plaintiff asserts that Centene has failed to honor its agreement to provide a neutral letter of reference on behalf of Plaintiff. R. Doc. 47 at 2. As alleged by Plaintiff, "CENTENE told the Louisiana Workforce Commission as well as prospective employers that the Plaintiff was 'discharged because of violating company policy/rules.'" *Id.* He then cites only to a letter from the Louisiana Workforce Commission to Plaintiff dated May 13, 2019, which states, in part, "YOUR EMPLOYER CONTENDS THAT YOU WERE DISCHARGED FROM YOUR EMPLOYMENT BECAUSE OF VIOLATION OF COMPANY RULES/POLICIES." R. Doc. 1-1 at 4. Per Plaintiff, this is a "slanderous statement" against him. Two things of note: first, this statement was made by the Louisiana Workforce Commission, not Centene; and second, it not a reference to a potential employer of Plaintiff but rather, was part of an investigation by the Louisiana Workforce Commission into Plaintiff's claim for unemployment benefits, which Plaintiff was granted. *Id.* The Court does not find this is evidence of Centene's failure to adhere to the provision in the Settlement Agreement that it would issue a neutral letter of reference. The Court, therefore, finds this unsubstantiated claim without merit.

it from the claims asserted in Plaintiff's Amended Complaint. As provided, in part, in Paragraph 4 of the Separation and Release Agreement:

> Employee … releases and forever discharges Company and any and all related, parent, affiliated or subsidiary corporations, including but not limited to Centene Corporation, as well as their officers, directors, agents, representatives and employees ("the Released Parties" also collectively and individually referred to as "Company") from and against any and all liabilities, claims, grievances, demands, charges, complaints, actions and causes of action whatsoever (collectively, "Claims"), whether known or unknown, which first arose prior to and through the date Employee signs this Release, including, but not limited to, any and all Claims for discrimination, harassment, retaliation, failure to accommodate or other Claims arising under or pursuant to Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act, the Americans With Disabilities Act of 1990; the Employee Retirement Income Security Act of 1974; the National Labor Relations Act (NLRA); any amendments to the foregoing; and any and all other federal, state or local statutes, regulations, and/or ordinances, as well as any claims for alleged wrongful discharge, negligent or intentional infliction of emotional distress, breach of contract, tort, fraud, or any other unlawful behavior, the existence of which is specifically denied by Company. Employee further waives and releases any and all rights to become, and agrees not to consent to become, a member of any class or collective action or multi-party action or proceeding in which claims are asserted against the Released Parties that are related in any way to Employee's employment or the termination of employment with the Released Parties. Employee further agrees to withdraw any pending Charges of Discrimination, and to take any other actions necessary to effect the same.[30]

In addition, Paragraph 5 of the Separation and Release Agreement, titled "No Other Claims," provides, in pertinent part:

> Employee further represents that, subject to the protected rights addressed in Paragraph 6, Employee will not file, or assign to others the right to file, or make any further claims settled by this Release against any Released Party at any time for actions taken up to and including the date Employee executes this Release.[31]

The Separation and Release Agreement was signed by Plaintiff on April 3, 2019. All claims made by Plaintiff in this case span a period of time through April 3, 2019. In fact, the EEOC Charge filed by Plaintiff in July 2019, after execution of the Separation and Release

---

[30] R. Doc. 39-2 at 4.
[31] *Id.* at 5.

Agreement, alleges the discrimination being alleged therein occurred on March 4, 2019, prior to said execution.[32] Based on the language of the signed Separation and Release Agreement, Plaintiff has already released Centene from liability for all claims alleged in his Amended Complaint relating to discrimination or termination of his employment. Also, while these provisions admittedly do not cover any failure on the part of Centene to meet its obligations established in said Agreement, as discussed above, the Court has been presented with evidence proving Centene's compliance and sees no indication of a failure by Centene to fully meet those obligations. Thus, as Plaintiff agreed to release Centene from any liability for any alleged causes of action arising prior to April 4, 2019, the Court finds Plaintiff's claims here barred, and Centene is entitled to summary judgment in this matter.[33]

### 2.     Centene's Request for Attorney's Fees

Finally, Centene argues that it is "entitled to recover its fees and costs associated with defending this action."[34] According to Centene, it is entitled to recover such fees by two separate means. First, per Centene, the Separation and Release Agreement "unequivocally provides for reasonable attorneys' fees and costs if Plaintiff breaches the contract by bringing suit based upon factual allegations and causes of action precluded by the Agreement."[35] In support, Centene cites to Paragraph 5 of the Separation and Release Agreement, also referenced above, which states:

> Employee … will not file, or assign to others the right to file, or make any further claims settled by this Release against any Released Party at any time for actions taken up to and including the date Employee executes this Release. If Employee breaks this promise, Employee agrees to pay all of Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any such claims

---

[32] *Id.* at 16.
[33] In addition to these arguments, Centene also argues that Plaintiff himself has breached the terms of the Separation and Release Agreement. Because a finding that Plaintiff breached the Agreement is not necessary for a finding of summary judgment in Centene's favor, the Court need not further address that argument here.
[34] R. Doc. 39-1 at 11.
[35] *Id.* at 12.

12

except this promise not to sue does not apply to claims that Employee may have under the Older Workers Benefit Protection Act (OWBPA) and the ADEA.[36]

However, as stated above, the Court here declines to reach the issue of whether Plaintiff breached the Separation and Release Agreement, a seemingly necessary predicate to awarding attorneys' fees under this provision. Centene may pursue this in a separate action against Plaintiff, but the Court will not here grant them pursuant to this contract provision.

Second, Centene claims it is entitled to recover attorneys' fees and costs pursuant to La. R.S. 23:303, a provision of the LEDL, which provides, in part, that "[a] plaintiff found by a court to have brought a frivolous claim under this Chapter shall be held liable to the defendant for reasonable damages incurred as a result of the claim, reasonable attorney fees, and court costs."[37] La. R.S. 23:303(B). In granting summary judgment, the Court does not find that Plaintiff's claims against Centene are frivolous. Taking into consideration that Plaintiff is proceeding *pro se* and that this litigation has been pending for over two and a half years, the Court will not award costs and attorneys' fees to Centene at this time.

### III.   CONCLUSION AND RECOMMENDATION

Based on the foregoing,

**IT IS ORDERED** that the Motion for Summary Judgment filed by Defendant Centene Corporation (R. Doc. 39) be **GRANTED** and that all of Plaintiff Jeffrey Beary's claims against Centene Corporation be **DISMISSED WITH PREJUDICE**.

---

[36] R. Doc. 39-2 at 5.
[37] R. Doc. 39-1 at 12-13.

**IT IS FURTHER ORDERED** that, to the extent the Motion for Summary Judgment filed by Plaintiff Jeffrey Beary (R. Doc. 47) is considered a Motion, it is **DENIED**.

Signed in Baton Rouge, Louisiana, on September 30, 2022.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**